# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 16-1503V
Filed: January 23, 2017
Not to be Published.

*****************************************
| | |
|---|---|
| GINGER SMITH, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | *   Motion for a Decision Dismissing |
| | *   Petition; influenza ("flu") vaccine; |
| SECRETARY OF HEALTH | *   osteoarthritis; no expert. |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
*****************************************

Wade H. Abed, II, Mankato, MN, for petitioner.
Robert P. Coleman, III, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION[1]

On November 14, 2016, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10–34 (2012) (the "Vaccine Act"), alleging that influenza ("flu") vaccine administered in her left arm on November 19, 2013 caused her arthritis. Pet. pmbl. and ¶ 12.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

By "arthritis," the undersigned assumes petitioner means osteoarthritis,[2] with which doctors diagnosed her pre-vaccination. Her doctors have never diagnosed petitioner with rheumatoid arthritis.

Because petitioner's osteoarthritis preceded her flu vaccination of November 19, 2013, petitioner would have to prove that flu vaccine not only significantly aggravated her left arm osteoarthritis, but also that her left osteoarthritis was significantly worse than her pre-flu vaccine left arm osteoarthritis.

On January 4, 2017, the undersigned issued an Order to Show Cause why this case should not be dismissed. The undersigned suggested petitioner file a motion to dismiss under Vaccine Rule 21(a)(1) by filing a notice of dismissal which would have resulted in an Order Concluding Proceedings. The effect of an Order Concluding Proceedings is that judgment will not enter. Vaccine Rule 21(a)(3).

On January 20, 2017, petitioner filed a Motion for a Decision Dismissing Petition under the code for Motion to Voluntarily Dismiss pursuant to Rule 21(a). However, in petitioner's last paragraph, she states she intends to file a civil action and intends to elect to reject judgment. Petitioner obviously was unaware that the effect of filing a motion to dismiss under Rule 21(a) is to preclude the clerk of court's filing a judgment under Rule 11(a). See Rule 21(a)(3). To protect petitioner's intent to file an election, therefore, the undersigned issues this decision dismissing the case, rather than an Order Concluding Proceedings.

In petitioner's Motion for a Decision Dismissing Petition, she states that an investigation of the facts and science supporting her case has demonstrated to her that she will be unable to prove that she is entitled to compensation in the Vaccine Program and, under these circumstances, to proceed further would be unreasonable and would waste the resources of the court, respondent, and the Vaccine Program. Mot. at ¶¶ 1, 2.

The undersigned **GRANTS** petitioner's Motion for a Decision Dismissing Petition.

### FACTS

### Pre-vaccination records

Petitioner has had primary osteoarthritis of the knee since March 12, 2008. Med. recs. Ex. 4, at 140.

---

[2] Osteoarthritis is "a noninflammatory degenerative joint disease seen mainly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain, usually after prolonged activity, and stiffness, particularly in the morning or with inactivity." Dorland's Illustrated Medical Dictionary 1344 (32nd ed. 2012) (hereinafter, "Dorland's").

On March 7, 2013, RN Katie Lashway noted that petitioner needed transportation to get to medical appointments and diabetes group visits because she was unable to ride the bus due to her inability to walk the length of a city block without having to stop for rest due to pain in her legs and joints.  Med. recs. Ex. 3, at 26.

On May 5, 2013, petitioner saw NP Carol A. Thiel for right biceps tendinitis.  Id. at 32.  Petitioner had had right shoulder pain for almost one month.  The right anterior upper arm pain radiated to the deltoid area and above.  She had been washing clothes the day before the pain started.  Id.

On May 14, 2013, petitioner saw Dr. Michael Mendoza for left shoulder pain, which she described as the "worst pain ever."  Id. at 35.  Petitioner pointed to the deltoid region of her left shoulder as being painful with radiation of pain down her left arm.  Id.  The pain was 10 out of 10.  Id.  On physical examination, petitioner had limited flexion of her left arm compared to her right arm.  Id. at 36.  She could move up to 100 degrees on her left, but up to 160 degrees on her right.  She had pain with abduction against force when isolating the deltoid and supraspinatus muscles.  Her rotator cuff tendinitis was improving but persistent.  Id.

On May 31, 2013, petitioner saw Dr. Thomas L. Campbell, complaining of left arm pain.  Id. at 41.  She had had some severe left arm pain, which might have been tendinitis, which now resolved on ibuprofen.  Id. at 42.

However, on June 24, 2013, petitioner started physical therapy for left shoulder pain, whose onset she said was three months earlier.  Med. recs. Ex. 4, at 143.  She said she started a new exercise program three months previously plus she also did a lot of housework.  Id.  She had been disabled since 2005 and was previously a hairdresser.  Id. at 144.  The pain in her left shoulder was lateral and anterior, sometimes extending to her wrist.  It was aching and painful.  On a scale of 10, she rated her pain at 8.  The symptoms worsened with reaching, lifting, carrying, and overhead activity.  Her left shoulder had forward flexion of 100 degrees and abduction of 100 degrees.  Id.  P-T Mary Jane Bouley wrote petitioner's findings were consistent with a 56- year-old woman with adhesive capsulitis with pain, range of motion limitations, strength limitations, and functional limitations.  Id. at 145.

On June 5, 2013, petitioner saw Dr. Campbell, complaining of a recurrence of left arm pain when she moved that arm or lifted things.  Med. recs. Ex. 3, at 55.  He diagnosed her with rotator cuff tendinitis.  Id. at 56.

**Post-vaccination records**

On November 19, 2013, petitioner received flu vaccine.  Id. at 66.

3

On December 17, 2013, petitioner saw Dr. Campbell for allergic rhinitis, diabetes type II, and benign essential hypertension.  Id. at 69.  She did not complain about her left arm.

On January 9, 2014, petitioner saw Dr. Elizabeth Loomis for sinusitis and benign essential hypertension.  Id. at 73.  She did not complain about her left arm.  On musculoskeletal physical examination, petitioner had normal range of motion, without swelling or tenderness.  Id. at 74.

On January 28, 2014, petitioner saw Dr. Campbell for a sinus infection.  Id. at 77.  She did not complain about her left arm.

On January 29, 2014, petitioner saw Dr. Stephen Lurie, complaining of nasal congestion occasional bilateral epistaxis (nosebleed), and abdominal pain.  Id. at 91.  She did not complain about her left arm.

On February 14, 2014, petitioner saw Dr. Thomas Gregg, complaining about left arm pain that had lasted three months.  Id. at 95.  The pain was dull and in the biceps region.  Id.  On physical examination, petitioner had pain on resisted external rotation of her left shoulder and mild biceps tendon tenderness, but all other physical examination maneuvers were normal without pain or tenderness.  Id. at 96.  He diagnosed her with muscle strain of her left biceps.  Id.  (This is three months post-flu vaccination and petitioner's complaint was restricted to her left biceps, not her left shoulder.  Her vaccination would have been administered in her deltoid, not her biceps.)

On February 27, 2014, petitioner saw Dr. Campbell for various reasons, including diabetes, gastroesophageal reflux, losing weight, left arm pain, and neck pain.  Id. at 99-100.  She said her neck and shoulder pain were the "worst pain ever".  Id. at 100.  Dr. Campbell noted that petitioner's left arm pain had been occurring the prior one to two weeks from the triceps into the left biceps.  Id.  He reflected she had left arm pain in spring 2013 when she had a shoulder injection in May 2013 that was helpful.  She denied any injury in the area.  Id.  Dr. Campbell's assessment was her left arm pain was likely musculoskeletal.  Id. at 106.

On April 23, 2014, petitioner went for a P-T evaluation with P-T Danielle Blankenship.  Med. recs. Ex. 4, at 161.  Petitioner told P-T Blankenship that there was no specific cause for her left upper arm pain.  Its onset was over a year previously.  The pain started in her shoulder and then went down her wrist to her hand.  It then went into her left axilla.  She had been exercising, but was afraid to keep exercising for fear it might cause further pain to her left arm.  The pain was aching, sharp, and constant.  It was in all aspects of her left arm and shoulder, including the left scapular muscles.  She had decreased range of motion.  It hurt at night, when she reached overhead to the side or behind her back, or when she lifted.  Id.

On April 30, 2014, petitioner returned to P-T and felt her pain improved.  Id. at 192.  She had received a cortisone injection to her left shoulder since her last P-T.  Id. at 205.

4

On May 29, 2014, petitioner saw Dr. Campbell for a variety of reasons including pain in her left shoulder. Med. recs. Ex. 3, at 115. She went to an orthopedist in Brockport who diagnosed her with arthritis of her shoulder and gave her a steroid injection which helped somewhat. Id. at 116. She was undergoing physical therapy, which helped. Id.

On August 1, 2014, petitioner saw PA Colleen McTammany for a follow up to her left elbow and shoulder pain. Med. recs. Ex. 4, at 232. A cortisone injection in the lateral epicondylitis the prior time helped her pain significantly. Now she complained of an occasional ache in her forearm. She had 5 out of 5 strength in her shoulder, elbow, and wrist. The assessment was lateral epicondylitis. Id.

On November 14, 2014, petitioner returned to PA McTammany for follow up. Id. at 258. She had forearm pain that day and felt a popping and pain in her neck. There was no known injury. PA McTammany reviewed petitioner's MRI of her shoulder in 2010. X-ray revealed petitioner had glenohumeral joint arthritis with a spur. Id.

On December 1, 2014, petitioner saw Dr. Donna G. Ferrero, complaining of chronic, left-sided shoulder pain following a flu shot in 2013. Id. at 272-73. This was over one year since she had the flu vaccination and it was the first time petitioner told a doctor that her shoulder pain followed a flu vaccination. Petitioner told Dr. Ferrero that her symptoms had progressed so that she now had left-sided neck pain and wrist pain. Id. at 273. Doctors had diagnosed her with rotator cuff tendinitis, lateral epicondylitis, and wrist sprain. Physical therapy did not help. Id.

On December 11, 2014, petitioner underwent a physical assessment with OTD Dana Emery during which petitioner made less than optimal effort with grip and pinch testing. Id. at 326. If petitioner had given full effort, a bell curve would have resulted from grip testing in all five positions. However, petitioner's readings were nearly identical across all positions, indicating poor effort. Petitioner reported inability to use her left arm due to pain, although she was able to get down into the bottom of a tub and out of it without assistance. Petitioner also reported independence in feeding, including cutting meat, and independence in grooming, including opening containers. OTD Emery noted that these findings were not consistent with grip and pinch strength testing. Id.

On January 9, 2015, petitioner saw NP Lori Conway with numerous complaints, including left arm pain, which she related to her flu vaccination on November 19, 2013. Med. recs. Ex. 3, at 121-22. Petitioner said she remembered the vaccination was very painful. Id. at 122. However, NP Conway noted that petitioner's MRI in 2010 showed problems with her rotator cuff. Moreover, there were recent x-rays showing petitioner had arthritis and a bone spur. On physical examination, petitioner had left arm pain and tenderness over the shoulder, biceps, and triceps. Id. NP Conway commented that she "again reiterated that I did not think this was related to her influenza vaccine." Id. at 123.

5

On March 23, 2015, petitioner saw Dr. Campbell, complaining of ongoing pain in her left shoulder. Id. at 130. A recent MRI showed significant arthritis of her left shoulder. Id.

On March 30, 2015, Dr. Jonathan C. Gabel wrote that imaging of petitioner's left shoulder showed: (1) mild left supraspinatus tendinopathy with superimposed partial-thickness articular surface tear; (2) moderate infraspinatus tendinopathy, and moderate tendinopathy of the intra-articular portion of the long head of the biceps tendon; and (3) severe glenohumeral joint osteoarthritis, degeneration/tearing of the labrum, and small glenohumeral joint effusion with debris vs. synovitis. Med. recs. Ex. 4, at 91. His assessment was degenerative joint disease of the left shoulder. His suggestion was to repeat the cortisone injection and P-T. Petitioner might eventually require arthroplasty.[3] Id.

On November 9, 2015, Dr. Natercia Rodrigues wrote that petitioner injured herself moving her mother. Med. recs. Ex. 3, at 188. Petitioner's mother had been in and out of the hospital for congestive heart failure. Petitioner took care of her while she was in the hospital, helping her mother with washing herself and moving around. Petitioner reported she had back pain generalized to her left side. Petitioner had to push manually the footrest of her mother's recliner down into her chair and, when she did this, petitioner felt pain on her left shoulder and left side down into her back. She felt as if she pulled a muscle. Petitioner had known left shoulder osteoarthritis and doctors instructed her not to do any lifting with her left shoulder. She got a steroid shot every three to four months. Petitioner was getting an aide to help her mother. Id.

On November 24, 2015, petitioner saw Dr. Assunta Ritieni for left shoulder pain of two months, and left rib pain after trying to lift her mother. Id. at 192. She also complained of aching and worsening with lifting her arm and coughing. Id.

On January 7, 2016, petitioner saw Dr. Campbell who noted that petitioner was recently evaluated for her left shoulder pain and was found to have a rotator cuff tear with significant tendinopathy. Id. at 198. On physical examination, she had a very tender left rotator cuff with limited range of motion of her shoulder. Id. at 199.

On March 21, 2016, MRI evaluation of petitioner's left shoulder concluded: (1) mild left supraspinatus tendinopathy with superimposed partial-thickness articular surface tear; (2) moderate infraspinatus tendinopathy and moderate tendinopathy of the intra-articular portion of the long head of the biceps tendon; and (3) severe glenohumeral joint osteoarthritis, degeneration/tearing of the labrum, and small glenohumeral joint effusion with debris vs. synovitis. Med. recs. Ex. 4, at 125. The diagnosis was left glenohumeral arthritis, partial tear of left rotator cuff, and left shoulder pain. This diagnosis was consistent with arthritis and partial rotator cuff tear. Id.

---

[3] Arthroplasty is "plastic surgery of a joint." Dorland's at 158.

## DISCUSSION

To satisfy her burden of proving causation in fact, petitioner must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of HHS, 418 F.3d 1274, 1278 (Fed. Cir. 2005). In Althen, the Federal Circuit quoted its opinion in Grant v. Sec'y of HHS, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury[,]" the logical sequence being supported by "reputable medical or scientific explanation[,]" i.e., "evidence in the form of scientific studies or expert medical testimony[.]"

418 F.3d at 1278.

Petitioner must show not only that but for flu vaccine, she would not have osteoarthritis, but also that flu vaccine was a substantial factor in bringing about her osteoarthritis. Shyface v. Sec'y of HHS, 165 F.3d 1344, 1352 (Fed. Cir. 1999).

Here, however, petitioner had osteoarthritis before her flu vaccination in 2013. Therefore, she would have to prove that the 2013 flu vaccine significantly aggravated her pre-existing osteoarthritis. The Vaccine Act defines "significant aggravation" in 42 U.S.C. § 300aa-33(4) as "any change for the worse in a preexisting condition which results in markedly greater disability, pain, or illness accompanied by substantial deterioration of health."

The medical records show that flu vaccine did not significantly aggravate petitioner's preexisting osteoarthritis. It took petitioner three months after vaccination even to mention that her left arm hurt and, when she did complain to her doctors, she said what hurt was her left biceps, not her shoulder. For months, she could not give treating doctors and physical therapists a cause for her pain. She related her left arm osteoarthritis to the left arm osteoarthritis that Dr. Campbell diagnosed in May 2013. Only in December 2014, more than one year after flu vaccination, did she even mention that her left arm had been hurting her since the 2013 flu vaccination, but in light of the earlier records, this December 2014 statement is not credible. There was one significant aggravator of her left shoulder pain--when she moved her mother's position when her mother had congestive heart failure and was in the hospital, petitioner seriously aggravated her preexisting left arm osteoarthritis.

Osteoarthritis is generally a disease of the elderly resulting in degeneration of joints. Beyond the fact that petitioner has struggled since 2008 with knee osteoarthritis, she has periodically had problems with both her left and right shoulders, even complaining that the pain in her left shoulder pre-vaccination was the "worst ever."

Flu vaccination can occasionally be administered too high up, i.e., in the shoulder itself rather than in the deltoid.  But if that had happened to petitioner, she would have had immense pain that sent her to the doctor or an emergency room within days of vaccination.  That did not happen.  Petitioner is frequently at a doctor's office for her diabetes, morbid obesity, osteoarthritis, sinusitis, gastroesophageal reflux, abdominal pain, and other illnesses.  Her first post-vaccinal complaint about her left arm occurred three months after vaccination and she complained about her left biceps.  The biceps is not the location of a vaccination. It is not near the shoulder.

Moreover, none of petitioner's treating doctors opined that the 2013 flu vaccination caused or significantly aggravated petitioner's osteoarthritis.  Nurse practitioner Lori Conway reiterated her opinion that petitioner's left arm pain had nothing to do with her flu vaccination.

The Federal Circuit in Capizzano emphasized that the special masters are to evaluate seriously the opinions of petitioner's treating doctors since "treating physicians are likely to be in the best position to determine whether a logical sequence of cause and effect show[s] that the vaccination was the reason for the injury."  440 F.3d at 1326.  See also Broekelschen v. Sec'y of HHS, 618 F.3d 1339, 1347 (Fed. Cir. 2010); Andreu v. Sec'y of HHS, 569 F.3d 1367, 1375 (Fed. Cir. 2009).

The undersigned cannot rule in petitioner's favor based solely on her allegations "unsubstantiated by medical records or by medical opinion."  42 U.S.C. § 300aa-13(a)(1).  The medical records do not substantiate flu vaccine causing petitioner any reaction much less that she had significant left arm pain subsequent to it or increased osteoarthritis because of it.  Petitioner did not file an expert medical opinion in support of her allegation that flu vaccine caused her arthritis.  The undersigned **GRANTS** petitioner's Motion for a Decision Dismissing Petition.  The undersigned **cancels** the first telephonic status conference scheduled in this case on Tuesday, February 7, 2017, at 12:00 p.m. (EST).

## CONCLUSION

This petition is **DISMISSED**.  In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

**IT IS SO ORDERED.**

January 23, 2017                                                                            s/Laura D. Millman
DATE                                                                                                Laura D. Millman
                                                                                                            Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.