# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 16-1503V
Filed: August 30, 2017
Not for Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| GINGER SMITH, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | *   Attorneys' fees and costs decision; |
| | *   lack of reasonable basis |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Wade H. Abed, II, Mankato, MN, for petitioner.
Robert P. Coleman, III, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION DENYING AN AWARD OF ATTORNEYS' FEES AND COSTS[1]

On November 14, 2016, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) alleging that her receipt of influenza ("flu") vaccine caused her to develop arthritis. On January 23, 2017, the undersigned issued a decision dismissing the case. On May 15, 2017, petitioner filed a motion for attorneys' fees and costs. For the reasons set forth below, the undersigned **DENIES** petitioner's motion for attorneys' fees and costs.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

## PROCEDURAL HISTORY

Petitioner filed her petition on November 14, 2016.

On January 4, 2017, the undersigned filed an Order to Show Cause. In her Order to Show Cause, the undersigned explained that petitioner had osteoarthritis[2] both before and after her receipt of flu vaccine.[3] The undersigned said petitioner could amend her petition to allege the flu vaccine significantly aggravated her osteoarthritis, but that petitioner was unlikely to succeed with that claim because her osteoarthritis appeared to be the same before and after her receipt of flu vaccine. The undersigned noted petitioner did not complain of pain in her left arm until three months after her receipt of flu vaccine. When she did finally complain of pain in her left arm, she said her left bicep hurt, not her shoulder. She did not relate the pain in her arm to her receipt of flu vaccine until one year after she received the vaccination.

On January 20, 2017, petitioner filed a Motion for a Decision Dismissing Petition. In paragraph 5 of her motion, petitioner said she was moving under section 21(a)(2) and she intended to elect to reject judgment and to file a civil action. Because she wanted to elect to reject judgment, on January 23, 2017 the undersigned issued a decision dismissing petitioner's petition, which enabled petitioner to get a judgment and sue civilly.

On May 15, 2017, petitioner filed a motion for attorneys' fees and costs, requesting attorneys' fees of $7,315.00 and attorneys' costs of $1,397.82, for a total request of $8,712.82. In accordance with General Order #9, petitioner submitted a signed statement saying she had incurred no costs in pursuit of her claim.

On May 22, 2017, respondent filed a response to petitioner's motion for attorneys' fees and costs, arguing that petitioner did not have a reasonable basis to bring her claim. Resp. at 1. Respondent pointed out the same issues raised in the undersigned's Order to Show Cause: that petitioner was diagnosed with osteoarthritis before receiving flu vaccine, and that petitioner's medical records show petitioner did not experience significant aggravation of her preexisting osteoarthritis. Id. at 2. Finally, respondent argues that petitioner's counsel had ample time to review the records before he filed the petition. Id. at 5.

On June 2, 2017, petitioner filed a reply to respondent's response to her application for attorneys' fees and costs. In her reply, petitioner argues her case was supported by reasonable

---

[2] Osteoarthritis is "a noninflammatory degenerative joint disease seen mainly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain, usually after prolonged activity, and stiffness, particularly in the morning or with inactivity." Dorland's Illustrated Medical Dictionary 1344 (32nd ed. 2012).

[3] Petitioner did not clarify in her petition whether she was alleging that the flu vaccine caused osteoarthritis or rheumatoid arthritis. However, petitioner was diagnosed with osteoarthritis prior to her receipt of flu vaccine on November 19, 2013. She was never diagnosed with rheumatoid arthritis. Therefore, the undersigned based her Order to Show Cause on petitioner having osteoarthritis.

basis.  Petitioner filed a letter to her attorney dated January 16, 2017 in which she says the injection of flu vaccine on November 19, 2013 was so painful she screamed and tears came out of her eyes.  Reply at 3.   Petitioner argues she did not immediately report this pain to her doctor because she was accustomed to dealing with pain in her day-to-day life and because caring for her ill mother was her primary concern.  Id.  She said she treated the pain with rubbing alcohol and Tylenol.  Id.  Petitioner's counsel also argues that petitioner told him she believed her doctors would be willing to relate her alleged injuries to the flu vaccine. Id. at 4.  Petitioner filed an affidavit from her attorney saying petitioner told him her treating doctors would be willing to provide a medical opinion supporting her case.  See Abed Aff. at ¶2.

This matter is now ripe for adjudication.

## FACTUAL HISTORY

### Pre-vaccination records

Petitioner has had primary osteoarthritis of the knee since March 12, 2008.  Med. recs. Ex. 4, at 140.

On March 7, 2013, RN Katie Lashway noted that petitioner needed transportation to get to medical appointments and diabetes group visits because she was unable to ride the bus due to her inability to walk the length of a city block without having to stop for rest due to pain in her legs and joints.  Med. recs. Ex. 3, at 26.

On May 5, 2013, petitioner saw NP Carol A. Thiel for right biceps tendinitis.  Id. at 32.  Petitioner had had right shoulder pain for almost one month.  The right anterior upper arm pain radiated to the deltoid area and above.  She had been washing clothes the day before the pain started.  Id.

On May 14, 2013, petitioner saw Dr. Michael Mendoza for left shoulder pain, which she described as the "worst pain ever."  Id. at 35.  Petitioner pointed to the deltoid region of her left shoulder as being painful with radiation of pain down her left arm.  Id.  The pain was 10 out of 10.  Id.  On physical examination, petitioner had limited flexion of her left arm compared to her right arm.  Id. at 36.  She could move up to 100 degrees on her left, but up to 160 degrees on her right.  She had pain with abduction against force when isolating the deltoid and supraspinatus muscles.  Her rotator cuff tendinitis was improving but persistent.  Id.

On May 31, 2013, petitioner saw Dr. Thomas L. Campbell complaining of severe left arm pain, which might have been tendinitis, which resolved on ibuprofen.  Id. at 42.

However, on June 24, 2013, petitioner started physical therapy for left shoulder pain, with an onset three months earlier.  Med. recs. Ex. 4, at 143.  She said she started a new exercise program three months previously plus she also did a lot of housework.  Id.  She had been disabled since 2005 and was previously a hairdresser.  Id. at 144.  The pain in her left

shoulder was lateral and anterior, sometimes extending to her wrist. It was aching and painful. On a scale of 10, she rated her pain at 8. The symptoms worsened with reaching, lifting, carrying, and overhead activity. Her left shoulder had forward flexion of 100 degrees and abduction of 100 degrees. Id. P-T Mary Jane Bouley wrote petitioner's findings were consistent with a 56- year-old woman with adhesive capsulitis with pain, range of motion limitations, strength limitations, and functional limitations. Id. at 145.

On June 5, 2013, petitioner saw Dr. Campbell, complaining of a recurrence of left arm pain when she moved that arm or lifted things. Med. recs. Ex. 3, at 55. He diagnosed her with rotator cuff tendinitis. Id. at 56.

### Post-vaccination records

On November 19, 2013, petitioner received flu vaccine. Id. at 66.

On December 17, 2013, petitioner saw Dr. Campbell for allergic rhinitis, diabetes type II, and benign essential hypertension. Id. at 69. She did not complain about her left arm.

On January 9, 2014, petitioner saw Dr. Elizabeth Loomis for sinusitis and benign essential hypertension. Id. at 73. She did not complain about her left arm. On musculoskeletal physical examination, petitioner had normal range of motion, without swelling or tenderness. Id. at 74.

On January 28, 2014, petitioner saw Dr. Campbell for a sinus infection. Id. at 77. She did not complain about her left arm.

On January 29, 2014, petitioner saw Dr. Stephen Lurie, complaining of nasal congestion occasional bilateral epistaxis (nosebleed), and abdominal pain. Id. at 91. She did not complain about her left arm.

On February 14, 2014, petitioner saw Dr. Thomas Gregg, complaining about left arm pain that had lasted three months. Id. at 95. The pain was dull and in the biceps region. Id. On physical examination, petitioner had pain on resisted external rotation of her left shoulder and mild biceps tendon tenderness, but all other physical examination maneuvers were normal without pain or tenderness. Id. at 96. Dr. Gregg diagnosed petitioner with muscle strain of her left biceps. Id.

On February 27, 2014, petitioner saw Dr. Campbell for various reasons, including diabetes, gastroesophageal reflux, losing weight, left arm pain, and neck pain. Id. at 99-100. She said her neck and shoulder pain were the "worst pain ever". Id. at 100. Dr. Campbell noted that petitioner's left arm pain had been occurring the prior one to two weeks from the triceps into the left biceps. Id. He reflected she had left arm pain in spring 2013 when she had a shoulder injection in May 2013 that was helpful. She denied any injury in the area. Id. Dr. Campbell's assessment was her left arm pain was likely musculoskeletal. Id. at 106.

On April 23, 2014, petitioner went for a P-T evaluation with P-T Danielle Blankenship. Med. recs. Ex. 4, at 161. Petitioner told P-T Blankenship that there was no specific cause for her left upper arm pain. Its onset was over a year previously. The pain started in her shoulder and then went down her wrist to her hand. It then went into her left axilla. She had been exercising, but was afraid to keep exercising for fear it might cause further pain to her left arm. The pain was aching, sharp, and constant. It was in all aspects of her left arm and shoulder, including the left scapular muscles. She had decreased range of motion. It hurt at night, when she reached overhead to the side or behind her back, or when she lifted. Id.

On April 30, 2014, petitioner returned to P-T and felt her pain improved. Id. at 192. She had received a cortisone injection to her left shoulder since her last P-T. Id. at 205.

On May 29, 2014, petitioner saw Dr. Campbell for a variety of reasons including pain in her left shoulder. Med. recs. Ex. 3, at 115. She went to an orthopedist in Brockport who diagnosed her with arthritis of her shoulder and gave her a steroid injection which helped somewhat. Id. at 116. She was undergoing physical therapy, which helped. Id.

On August 1, 2014, petitioner saw PA Colleen McTammany for a follow up to her left elbow and shoulder pain. Med. recs. Ex. 4, at 232. An earlier cortisone injection in the lateral epicondylitis had helped her pain significantly. Now she complained of an occasional ache in her forearm. She had 5 out of 5 strength in her shoulder, elbow, and wrist. The assessment was lateral epicondylitis. Id.

On November 14, 2014, petitioner returned to PA McTammany for follow up. Id. at 258. She had forearm pain that day and felt a popping and pain in her neck. There was no known injury. PA McTammany reviewed petitioner's MRI of her shoulder in 2010. X-ray revealed petitioner had glenohumeral joint arthritis with a spur. Id.

On December 1, 2014, petitioner saw Dr. Donna G. Ferrero, complaining of chronic, left-sided shoulder pain following a flu shot in 2013. Id. at 272-73. This was over one year since she had the flu vaccination and it was the first time petitioner told a doctor that her shoulder pain followed a flu vaccination. Petitioner told Dr. Ferrero that her symptoms had progressed so that she now had left-sided neck pain and wrist pain. Id. at 273. Doctors had diagnosed her with rotator cuff tendinitis, lateral epicondylitis, and wrist sprain. Physical therapy did not help. Id.

On December 11, 2014, petitioner underwent a physical assessment with OTD Dana Emery during which petitioner made less than optimal effort with grip and pinch testing. Id. at 326. If petitioner had given full effort, a bell curve would have resulted from grip testing in all five positions. However, petitioner's readings were nearly identical across all positions, indicating poor effort. Petitioner reported inability to use her left arm due to pain, although she was able to get in and out of a bathtub without assistance. Petitioner also reported independence in feeding, including cutting meat, and independence in grooming, including opening containers. OTD Emery noted that these findings were not consistent with grip and pinch strength testing.

5

Id.

On January 9, 2015, petitioner saw NP Lori Conway with numerous complaints, including left arm pain, which she related to her flu vaccination on November 19, 2013. Med. recs. Ex. 3, at 121-22. Petitioner said she remembered the vaccination was very painful. Id. at 122. However, NP Conway noted that petitioner's MRI in 2010 showed problems with her rotator cuff. Moreover, there were recent x-rays showing petitioner had arthritis and a bone spur. On physical examination, petitioner had left arm pain and tenderness over the shoulder, biceps, and triceps. Id. NP Conway commented that she "again reiterated that [she] did not think this was related to her influenza vaccine." Id. at 123.

On March 23, 2015, petitioner saw Dr. Campbell, complaining of ongoing pain in her left shoulder. Id. at 130. A recent MRI showed significant arthritis of her left shoulder. Id.

On March 30, 2015, Dr. Jonathan C. Gabel wrote that imaging of petitioner's left shoulder showed: (1) mild left supraspinatus tendinopathy with superimposed partial-thickness articular surface tear; (2) moderate infraspinatus tendinopathy, and moderate tendinopathy of the intra-articular portion of the long head of the biceps tendon; and (3) severe glenohumeral joint osteoarthritis, degeneration/tearing of the labrum, and small glenohumeral joint effusion with debris vs. synovitis. Med. recs. Ex. 4, at 91. His assessment was degenerative joint disease of the left shoulder. His suggestion was to another cortisone injection and undergo physical therapy.

On November 9, 2015, Dr. Natercia Rodrigues wrote that petitioner injured herself moving her mother. Med. recs. Ex. 3, at 188. Petitioner's mother had been in and out of the hospital for congestive heart failure. Petitioner took care of her while she was in the hospital, helping her mother with washing herself and moving around. Petitioner reported she had back pain generalized to her left side. Petitioner had to push manually the footrest of her mother's recliner down into her chair and, when she did this, petitioner felt pain on her left shoulder and left side down into her back. She felt as if she pulled a muscle. Petitioner had known left shoulder osteoarthritis and doctors instructed her not to do any lifting with her left shoulder. She got a steroid shot every three to four months. Petitioner was getting an aide to help her mother. Id.

On November 24, 2015, petitioner saw Dr. Assunta Ritieni for left shoulder pain of two months, and left rib pain after trying to lift her mother. Id. at 192. She also complained of aching and worsening with lifting her arm and coughing. Id.

On January 7, 2016, petitioner saw Dr. Campbell who noted that petitioner was recently evaluated for her left shoulder pain and was found to have a rotator cuff tear with significant tendinopathy. Id. at 198. On physical examination, she had a very tender left rotator cuff with limited range of motion of her shoulder. Id. at 199.

On March 21, 2016, MRI evaluation of petitioner's left shoulder concluded: (1) mild left

supraspinatus tendinopathy with superimposed partial-thickness articular surface tear; (2) moderate infraspinatus tendinopathy and moderate tendinopathy of the intra-articular portion of the long head of the biceps tendon; and (3) severe glenohumeral joint osteoarthritis, degeneration/tearing of the labrum, and small glenohumeral joint effusion with debris vs. synovitis.  Med. recs. Ex. 4, at 125.  The diagnosis was left glenohumeral arthritis, partial tear of left rotator cuff, and left shoulder pain.  This diagnosis was consistent with arthritis and partial rotator cuff tear.  Id.

## DISCUSSION

### I. Entitlement to Fees Under the Vaccine Act

#### a. Legal Standard

Under the Vaccine Act, a special master or the U.S. Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard.  Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Petitioners are "entitled to a presumption of good faith."  Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Rules.  It has been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011).  In determining reasonable basis, the court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).  Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed.  Turner, 2007 WL 4410030, at *6–*9.

Traditionally, special masters have been "quite generous" in finding reasonable basis. Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, No. 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis.").  However, as former-Chief Judge Campbell-Smith noted in her affirmance of Special Master Moran's decision not to award attorneys' fees in Chuisano, "Fee denials are expected to occur.  A different construction of the statute would swallow the special master's discretion." Chuisano v. United States, 116 Fed. Cl. 276, 286 (Fed. Cl. 2014).  See also Dews v. Sec'y of

7

HHS, No. 13-569V, 2015 WL 1779148 (Fed. Cl. Spec. Mstr. Mar. 30, 2015) (in which the undersigned found petitioner was not entitled to attorneys' fees and costs because she did not have a reasonable basis to bring the petition).

### b. Good faith and reasonable basis

Petitioner is entitled to a presumption of good faith, and respondent does not contest that the petition was filed in good faith. Grice, 36 Fed. Cl. at 121. There is no evidence that this petition was brought in bad faith. Therefore, the undersigned finds that the good faith requirement is satisfied. However, for the reasons outlined below, the undersigned agrees with respondent that petitioner did not have a reasonable basis to bring her claim.

Petitioner's medical records do not support her claim that her receipt of flu vaccine on November 19, 2013 caused her to develop osteoarthritis because petitioner was diagnosed with osteoarthritis before she received the vaccine. Med. recs. Ex. 4, at 140. Petitioner's medical records also do not support that her receipt of flu vaccine significantly aggravated her preexisting osteoarthritis. After receiving the flu vaccine, petitioner visited various treaters on four different occasions but did not mention pain in her left arm until she visited Dr. Thomas Gregg nearly three months later. Id. at 96. Petitioner specifically complained to Dr. Gregg of pain in her left bicep, not in her left shoulder where she received the vaccine. Id. at 95. Petitioner did not originally link her left arm pain to her receipt of flu vaccine. She only connected the pain in her left arm to her flu vaccination on December 1, 2014, more than a year after her receipt of flu vaccine. Med. recs. Ex. 3, at 272-73. This lack of reporting is even more surprising in light of petitioner's statement in the letter to her attorney January 16, 2017 that she immediately cried out in pain and started crying when she received the flu vaccine because it was so painful. Moreover, none of her treaters attributed her arm pain to her receipt of flu vaccine. In fact, NP Conway noted she did not think petitioner's condition was related to her influenza vaccine. Id. at 123.

Counsel has a duty to investigate a claim before filing it. In Rehn v. Secretary of Health and Human Services, Judge Lettow explained "if an attorney does not actively investigate a case before filing, the claim may not have a reasonable basis and so may not be worthy of attorneys' fees and costs." 126 Fed. Cl. 86, 93 (Fed. Cl. 2016). The fact that petitioner believed her treating doctors would support her case did not give her reasonable basis to bring her claim. Review of petitioner's medical records would have shown petitioner's attorney that her treaters would be extremely unlikely to support petitioner's claim.

Petitioner did not contact her counsel on the eve of the running of the statute of limitations. She received flu vaccine on November 19, 2013. Even if petitioner's alleged vaccine injury began the day she received the vaccine, she had until November 21, 2016 before the statute of limitations would run on her claim. Petitioner's attorney's billing records show she had contacted counsel by April 23, 2015, over one year and six months before the running of the statute of limitations. Fee App., Tab 4, at 2. This should have been plenty of time for petitioner's counsel to receive and review petitioner's medical records and discover the same issues that led to the dismissal of petitioner's case. Petitioner's counsel had ample time to

perform this due diligence.  See Chuisano v. Sec'y of HHS, 116 Fed. Cl. 276, 291 (May 15, 2014) (finding that a special master acted within his discretion in not finding reasonable basis because, in part, the attorneys did not establish diligence and noting "an earlier telephone call to one of the firm's regularly retained experts might have provided some evidence of timely due diligence"); Solomon v. Sec'y of HHS, No. 14–0748V, 2016 WL 8257673, at *4 (Fed. Cl. Spec. Mstr. Oct. 27, 2016) ("Petitioner's counsel still is required to perform due diligence, given the available evidence and amount of time prior to the running of the statute of limitations.").

## CONCLUSION

The undersigned finds that an award of attorneys' fees and costs to petitioner is unreasonable.  Therefore, the undersigned **DENIES** petitioner's motion for attorneys' fees and costs.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

**IT IS SO ORDERED.**

Dated: August 30, 2017                                          s/ Laura D. Millman
                                                                               Laura D. Millman
                                                                               Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.